FILED
JEANNE A. NAUGHTON, CLERK
MAR 10 2020
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY KR  DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

LISA M. MANZ,

    Debtor.

Case No. 19-30090 (JNP)

Chapter 13

## MEMORANDUM DECISION DENYING, IN PART, MOTION OBJECTING TO CLAIM; AND DENYING CONFIRMATION OF PLAN

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

    Before the Court are two related matters: (1) the motion (the "Motion") filed by Lisa Manz (the "Debtor") objecting to the claim (the "Claim") of Audubon Mutual Housing Corporation ("Audubon"); and (2) confirmation of the Debtor's plan (the "Plan"). The primary issue in both matters is whether Audubon properly included attorneys' fees in the Claim, as this will impact the amount of the Claim and feasibility of the Plan. For the following reasons, the Motion is denied, in part, and confirmation of the Plan is denied.

### Jurisdiction

    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion and the Plan are core proceedings under 28 U.S.C. § 157(b)(2)(A), (B), and (L).

### Background

    The Debtor filed bankruptcy on October 24, 2019 ("Petition Date"). This is the Debtor's second filing within the last year. The Debtor's principal residence is 4 Kingfisher Place, Audubon Park, New Jersey (the "Property"). The Debtor lives at the Property in accordance with the terms of a "Mutual Home Ownership Contract" (the "Contract") between Audubon and the Debtor. The Court previously granted the Debtor's motion to extend the stay over the objection of Audubon. Dkt. No. 32. The Court also denied Audubon's motion to dismiss for bad faith. Id. The order

related to those decisions is currently on appeal before the District Court. Dkt. No. 42. Because the matters on appeal do not directly relate to the present issues, this Court has jurisdiction to consider the Motion and the Plan. See In re Commodore Corp., 86 B.R. 564, 566 (N.D. Ind. 1988).

The Claim states Audubon is owed $20,296.56 ($7,956.65 in arrears, and $12,339.85 in attorneys' fees) based on the Contract. Claim No. 4. The Claim further states Audubon is fully secured, does not state that there is any unsecured portion, and states it is not based on a lease. Id.

Schedules I and J show that the Debtor has disposable income of $322 per month. Dkt. No. 18. This is based on total income of $2,092 per month, less $1,770 in expenses, $735 of which is the monthly payment under the Contract. Id. The Debtor credibly testified at a hearing held on November 25, 2019 (the "November Hearing"), that her income has increased due to obtaining a new job, and that she was now earning approximately $3,000 per month. Nov. Hrg. at 10:48. However, as of the hearings related to the Motion and Plan, the Debtor had not amended her schedules to reflect the increased income.[1] The Plan lists the Contract as a lease which the Debtor intends to assume and cure the default over forty-four months under section 365 of the Bankruptcy Code. Dkt. No. 19. However, the Plan proposes to pay only the $7,350 in arrears owed to Audubon while omitting the attorneys' fees. The Debtor also proposes to pay the regular monthly payments to Audubon outside the Plan. Id. Audubon filed an objection to the Plan (Dkt. No. 37) arguing that the Contract must be treated either as an executory contract, or an unexpired lease under section 365(b)(1). Id. As such, Audubon argues, the Plan fails to "promptly" cure the arrears on the Contract, as required by section 365(b)(1)(a) of the Bankruptcy Code. Id. Audubon also objects to the Plan only repaying a portion of the total amount of Claim. Id.

The Debtor then filed the Motion, arguing that she is not liable for the attorneys' fees contained in the Claim. Dkt. No. 44. The Debtor argues liability for attorneys' fees is not imposed

---

[1] In fact, amended schedules have not been filed as of the date of this Opinion.

2

by the Contract. Id. The Debtor concedes that paragraph 18 of the Contract binds her to all "the By-Laws, and Rules and Regulations of the Corporation as they now exist or may hereinafter be enlarged, modified, amended, or promulgated." However, the Debtor argues that Audubon is attempting to impose the attorneys' fees through a "Finance Policy," which does not qualify as a resolution, by-law nor as a rule and regulation of Audubon. Id.

A hearing on confirmation of the Plan ("Confirmation Hearing") was held on January 8, at which the Debtor made several arguments, some for the first time. To begin, the Debtor argued that the Contract, if it is an executory contract under section 365 of the Bankruptcy Code, could be cured over forty-four months, because "prompt" is not defined by the Bankruptcy Code. Confirmation Hrg. at 11:48-11:51. The Debtor also argued that this is a "Home Ownership Contract" which makes it different from other executory contracts because both the Contract and the relationship between the parties are twenty-three years old, while other contracts which courts consider have shorter terms. Therefore, the Debtor argued, forty-four months is "prompt" under the facts and circumstances of this case. Id. Audubon argued that the overwhelming majority of caselaw finds that "prompt" means one year or less. Id. at 11:51. Regarding the nature of the Contract, counsel for Audubon argued that the Debtor's equity interest is reduced by the amount she owes, and that "in this case we've had evidence before the Court which shows her ownership interest, or equity interest, would be less than $6,000. She owes almost $8,000 not including the legal fees." Id. at 11:54:47. Because the Contract is titled a "Mutual Home Ownership Contract," and that both parties have, at different times, argued that it grants a security interest,[2] and at other times argued that it is a lease or executory contract, the Court asked the parties to brief the following issues: (1) whether the Contract is an executory contract or a lease, or similar to a

---

[2] The Claim was filed as a secured claim based on the Contract, yet Audubon later argued it is an executory contract. The Debtor scheduled the Contract as an executory contract, but later argued it was not executory.

3

mortgage for a cooperative association; (2) whether the Finance Policy, on which the Debtor's liability for attorneys' fees is based, qualifies as a corporate by-law, or other mechanism which the Debtor would be bound under the terms of the Contract; and (3) whether "promptness" should be tied to the length of the contract.

Both parties filed briefs on January 24. The Debtor's brief made only a single argument: that the Contract is not executory because both parties have completed their obligations under the terms of the Contract. Dkt. No. 49. The Debtor did not argue any alternative category or definition of the Contract, simply stating it is not executory. See id.

Audubon makes several arguments, including that the Debtor is liable for attorney fees, not because of the Finance Policy, but because the Debtor specifically agreed to pay these fees in a separate "Consent Agreement." Dkt. No. 50 at Ex. B. Audubon also argues that judicial estoppel now bars the Debtor from arguing she is not liable for attorney fees, and that the Contract is executory because: (1) the Debtor conceded it was on multiple occasions; and (2) the alternative would be to acknowledge that Audubon is not obligated to provide the Debtor with maintenance or repairs, etc. Audubon maintains that forty-four months is not a prompt cure, and that the Debtor is not able to file a feasible plan.

The Debtor's reply argues that the Consent Agreement imposes liability on the Debtor only for Audubon's attorneys' fees as of the date of the Consent Agreement and did not impose liability for future attorneys' fees. Dkt. No. 51. Further, the Debtor argues that the Finance Policy is not binding on the Debtor. Id. Finally, the Debtor's reply argues the Contract is not executory, but again does not offer a viable alternative interpretation. Id.

Audubon's reply argues that the language of the Consent Agreement imposes liability on the Debtor for all attorneys' fees, and that the Debtor agreed to all Membership Policies including the Finance Policy. Dkt. No. 52 (citing Dkt. No. 51). Audubon notes that the Debtor's failed to

4

brief the issue of whether Debtor is bound by the Finance Policy and argues this bolsters Audubon's position. Id. Audubon reiterates its arguments that the Contract is executory because obligations are due on both sides and failure to perform by either party would be a material breach; and that the multiple admissions by the Debtor that the Contract is executory should prevent the Debtor from arguing it is anything else. Id.

A further hearing was held on February 7, 2020 (the "February Hearing"), at which the Debtor argued that the Consent Agreement should not apply because the Debtor was unrepresented when she signed it, and that it was an agreement to settle the Debtor's default, which the Debtor has since cured so that the terms of the Consent Agreement should no longer apply. Feb. Hrg. at 10:15. The Debtor also argued that the attorneys' fees charged by Audubon were exorbitantly high. Finally, the Debtor argued that the Contract should not be treated as executory because the Debtor held an ownership interest, which made this distinct from other cases. Id. at 10:16–10:18.

Audubon's counsel argued, for the first time, and in contrast to statements made at the Confirmation Hearing and on the Claim signed by counsel, that the Debtor held no ownership interest in the Property or any other property, and therefore, Audubon was an unsecured creditor. Id. at 10:18. Counsel then commented that this Court does not hold debtors accountable for the documents or agreements they execute, and that this Court ignores the statements placed on official bankruptcy forms including the Debtor's Petition and Schedules. Id. at 10:27-10:29.[3] Counsel

---

[3] The Court is compelled to respond to counsel's statement that counsel "[does not] know why the courts no longer put any faith or credit in these petitions and schedules which are signed under oath . . . ." Feb. Hrg. at 10:28. The Bankruptcy Code and Rules allow all parties a reasonable opportunity to correct outdated information. In re Okan's Foods, Inc., 217 B.R. 739, 752 (Bankr. E.D. Pa. 1998) (citing 11 U.S.C. § 521). Moreover, this Court allows parties reasonable opportunity to correct inadvertently mistaken statements made, because it does not equate a lack of knowledge or information at the time of filing to be an intent to deceive. If such a standard applied, Audubon's objection to the Plan may have been overruled based on its own admission. Audubon's counsel signed and filed the Claim stating that Audubon held a fully secured interest in the Property, with no unsecured portion of the claim, and that there was no payment required to cure a default. The Claim further states that the Contract was not a lease. Claim No. 4.

5

reiterated arguments that the Contract was executory and that the Consent Agreement made the Debtor liable for attorneys' fees. Counsel repeatedly stated that the Debtor's past admissions should not be ignored and that the Debtor should be judicially estopped from arguing that the Contract is not executory, that she isn't liable for attorneys' fees, or that she may have more income now than is listed on her Schedules. Id.

## Discussion

There are two matters before the Court: (1) the Motion; and (2) confirmation of the Plan. The Court will first address the Motion.

### A. The Motion

Section 502(a) of the Bankruptcy Code provides that a claim is allowed unless a party in interest objects. 11 U.S.C. § 502. Section 502(b) provides for the court to determine the amount of a claim and allow it in such amount. Id. A proof of claim filed in accordance with Bankruptcy Rule 3001 "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The burden of proof going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). See also In re Anthony, 453 B.R. 782, 786 (Bankr. D.N.J. 2011) (following Allegheny). The objecting party must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. Id.

Here, the Debtor objects to including attorneys' fees in the Claim. Dkt. No. 44. The Debtor argues that liability for these fees was not agreed to by the parties nor appropriate under law. Id. The Debtor also argued at the February Hearing that the amount of the fees is unreasonably high.

Feb. Hrg. at 10:15. Based upon the Motion and arguments made at the hearings, the Debtor has met her initial burden, such that the burden shifts to Audubon to prove the validity of the Claim.

When considering the award of attorneys' fees, courts apply the American Rule, which states that a prevailing litigant is not ordinarily entitled to attorneys' fees, subject to limited exceptions. Truocchio v. Smith, 2016 WL 4036840, at *2 (Bankr. D.N.J. July 15, 2016) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)). Among the exceptions to the rule is when a contract expressly provides for the payment of attorney's fees. Cityside Archives, Ltd. v. New York City Health & Hosps. Corp., 37 F. Supp. 2d 652, 656–57 (D.N.J. 1999) (citing Skehan v. Board of Trustees of Bloomsberg State College, 538 F.2d 53, 56 (3d Cir. 1976)).

In this case, the issue is whether the Finance Policy imposing liability for attorneys' fees was binding on the Debtor under the terms of the Contract. The Contract provides that its terms as well as any By-Laws, Rules or Regulations in place or thereafter enacted are binding on the Debtor. See Dkt. No. 37. Audubon has not submitted anything to show that the Finance Policy was enacted in a manner similar to a By-Law, Rule or Regulation. Therefore, the Court cannot conclude that the Finance Policy applies to the Debtor under the terms of the Contract. However, Audubon did produce the Consent Agreement, which contains the following language:

> [Debtor] acknowledges and agrees that [Audubon] is authorized to be <u>reimbursed all attorneys' fees and costs incurred relative to [Debtor's] violations of the [Contract] and the By-laws and Membership Policies</u>, including but not limited to enforcement of this Agreement and the collection of all monies due [Audubon], including attorneys' fees incurred by [Audubon] to collect same.

Dkt. No. 50 (emphasis added).

The Debtor argues that the Consent Agreement makes the Debtor liable only for attorneys' fees listed in the Consent Agreement, whereas Audubon argues that the language of the agreement is not so limited but includes future fees.

7

The Court agrees with Audubon's interpretation that the Consent Agreement provides for all attorney's fees related to violations of the Contract and Consent Agreement. Moreover, the paragraph also includes language binding the Debtor to policies adopted by Audubon. This further supports the conclusion that the Debtor agreed to be liable for all attorneys' fees associated with enforcing the Contract, including attorneys' fees incurred in trying to enforce the current breach of the Contract and in the state court and bankruptcy court. Therefore, the Court overrules the Debtor's objection, and finds that Claim may include attorney's fees.

However, the Debtor has also objected to the reasonableness of the attorneys' fees. Under New Jersey law, any arrangement for attorneys' fees is subject to judicial review as to its reasonableness. Cityside Archives, Ltd. v. New York City Health & Hosp. Corp., 37 F. Supp. 2d 652, 657 (D.N.J. 1999) (citing Center Grove Assocs. v. Hoerr, 146 N.J. Super. 472, 474, (App. Div. 1977)). Audubon did not attach records to support the amount of attorneys' fees to the Claim nor to its other filings. Therefore, Audubon and the Debtor shall complete discovery related to this issue and the Court will hold a further hearing to determine the reasonableness of the attorneys' fees.

B.   Plan Confirmation

Turning to the Plan which seeks to assume the Contract and cure the arrears over the length of the Plan – forty-four months. Dkt. No 19. Under sections 1322(b)(7) and 365(a), a Chapter 13 debtor may assume or reject an executory contract or unexpired lease. See In re DiCamillo, 206 B.R. 64, 66 (Bankr. D.N.J. 1997). However, if there has been a default in an executory contract or lease, the Debtor may only assume if she:

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

8

> (C) provides adequate assurance of future performance under such contract or lease.

Id. at 71-72 (citing 11 U.S.C. § 365(b)(1)). The preliminary issue is whether the Contract is an unexpired lease or executory contract.

The Plan states that the Contract "may be interpreted to be a lease" and lists it as an assumed unexpired lease or executory contract. Dkt. No. 19. Despite that, the Debtor now argues that the Contract does not qualify as either an unexpired lease or executory contract. Dkt. No. 49. Audubon initially asserted it holds a secured claim based on the Contract. Claim No. 4. Despite that, Audubon now argues it is an unsecured creditor and a counter-party to an executory contract. Dkt. No. 52.

Audubon argues that the Debtor should be judicially estopped from arguing that this is anything other than an executory contract, because she: (1) consented to the jurisdiction of the landlord-tenant court in a prior ejectment action thus granting that court jurisdiction and establishing this as a lease or executory contract; (2) previously acknowledged it was an executory contract in the Consent Agreement while unrepresented in a state court matter; and (3) listed it as an executory contract or lease in her Petition and Schedules. Confirmation Hrg. at 12:04; Feb. Hrg. at 10:19-21; Dkt. Nos. 50 and 52. The Court rejects this argument. To begin, a party cannot consent to subject matter jurisdiction. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 65 (1978); Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982). As such, the Debtor's consenting to the jurisdiction of the landlord-tenant court has no impact on the status of the Contract. Further, judicial estoppel requires, among other things, that the party be successful in the prior action and the court accepted the party's prior position. New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001); Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 782 (3d Cir. 2001). In this case, the parties settled the state court action and the Debtor has not been successful in convincing this Court of its position that the Contract was executory nature in

a prior matter before the Court.[4] Therefore, the Court rejects Audubon's arguments, noting that judicial estoppel is "an equitable doctrine invoked by a court at its discretion," and there is no basis to invoke judicial estoppel in this case. New Hampshire v. Maine, 532 U.S. at 749-50 (2001).

Audubon also argues that the Contract is executory because both parties have obligations to perform. For example, Audubon must continue to provide and pay for fire insurance, maintenance, etc. and the Debtor must continue to make payments. Dkt. No. 50. Despite being offered time to brief this matter, the Debtor did not offer any alternative interpretation of the Contract, instead arguing that the Contract is not executory because the parties' obligations to each other are complete.

Although the Bankruptcy Code contains no definition of an executory contract, courts have generally relied on the following definition: "[an executory contract is] a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp., 872 F.2d 36, 39 (3d Cir. 1989). A review of the Contract reveals that Audubon has obligations it must continue to fulfill under its terms, including: maintenance and repairs to the Property; maintaining fire and other insurance on the Property; providing management and administration of the Property, etc. See Dkt. No. 50. Similarly, the Debtor's failure to make payments would constitute a material breach on her part. Given this, the Court finds that the Contract is an executory contract. Therefore, the Debtor cannot assume the Contract unless she meets the requirements of section 365(b) and promptly cures any default.

---

[4] Were the Court to adopt Audubon's position regarding judicial estoppel, equity might demand the Court apply judicial estoppel to bar Audubon's arguments that it is an unsecured creditor that is owed arrears. The Claim asserts that Audubon is fully secured with no cure amount owed, but Audubon now argues that it does not hold a security interest, that the Contract is an executory contract or unexpired lease, and that there is a significant cure claim.

10

Because the Contract is executory, the Court must determine whether the Plan's proposal to cure the default over a forty-four-month period satisfies the Code's requirement for a "prompt" cure. The court in Dicamillo discussed this issue at length and noted that while "promptly" is not defined by the Code, courts have consistently held that a proposed cure over a period of two years or more was not "prompt" for purposes of section 365(b)(1). 206 B.R. at 72 (citing In re Flugel, 197 B.R. 92, 97 (Bankr. S.D. Cal.1996) (proposed cure over ten years not prompt); In re Embers 86th St., Inc., 184 B.R. 892, 901–02 (Bankr. S.D.N.Y. 1995) (twenty-nine months); In re Liggins, 145 B.R. 227 (Bankr. E.D.Va.1992) (48–60 months); In re Lloyd, 1992 WL 167047 (Bankr. E.D. Pa. July 6, 1992) (3–5 years); In re Yokley, 99 B.R. 394 (Bankr. M.D. Tenn.1989) (two years)). At the Confirmation Hearing, the Debtor argued that the definition of "prompt" should depend on the length of the relationship between the parties, Confirmation Hrg. at 11:48, but did not cite any case law to support this argument despite being given time to do so. The Court's research did not reveal any case law in support of the Debtor's position; and more importantly, the Court finds DiCamillo to be persuasive. Therefore, curing the default over forty-four months is not "prompt" and confirmation of the Plan is denied.

Audubon argues that based on the disposable income of $322 listed in the Debtor's schedules, the Debtor cannot confirm any plan because the amount of the Claim is too high for the Debtor to "promptly" cure the default. Audubon argues that the Schedules are an admission, under oath, by the Debtor that this is her only disposable income, and that the Debtor should be bound to that amount in proposing any plan. The Court disagrees.

Although the Plan cannot be confirmed, the Court cannot find that the Debtor is unable to confirm any plan. Because the amount of the Claim has not been fixed and because the Debtor

credibly testified that her income has significantly increased, see Nov. Hrg. at 10:48, the Debtor may be able to propose an alternate plan that could be confirmed.[5]

The Bankruptcy Code allows and indeed requires a debtor to file amended schedules to reflect any changes in the income and expenses. Okan's Foods, 217 B.R. at 752 (citing 11 U.S.C. § 521). The Debtor has not yet amended her Schedules to reflect this new income and is required to do so within fourteen days. Moreover, a debtor is entitled to file a modified plan after confirmation of a prior plan is denied. See In re Young, 237 F.3d 1168, 1176-77 (10th Cir. 2001). The Debtor may be able to propose a feasible plan depending on several factors, including the final allowed amount of the Claim and her current monthly net income.

## Conclusion

The Debtor is liable for the reasonable attorneys' fees incurred by Audubon in enforcing the Contract. Audubon and the Debtor shall confer related to discovery necessary to review the attorneys' fees, and scheduling of a further hearing on the Claim. Additionally, the Court denies confirmation of the Plan. Because the Contract is executory, if the Debtor intends to assume the Contract, any default must be cured "promptly," which is no longer than one-year. However, dismissal is not appropriate at this time because it is possible that the Debtor could propose a

---

[5] Audubon's counsel's remarks at the February Hearing, that the Court "likes to give the debtors a chance to fall on their face," and that "this isn't debtor court, this is bankruptcy court" were not appropriate and offensive to the Court. Feb. Hrg. at 10:32, 10:35. The Court reminds Counsel that one of the purposes underlying the enactment of Chapter 13 was to enable debtors to develop and maintain a plan for repayment of debts rather than be forced into a liquidation. In re Carels, 416 B.R. 153, 159 (Bankr. E.D. Pa. 2009) (citing Report of the Committee on the Judiciary, H.R. 95–595, 95th Cong. 1st Sess.1978, p. 118, U.S. Code Cong. & Admin. News 1978, p. 5787). Thus, it is preferable in a "failing" but potentially viable Chapter 13 case, for the debtors to expend resources and time attempting to "save" the case and resolve the problems that threaten dismissal. See In re Lewis, 346 B.R. 89, 110 (Bankr. E.D. Pa. 2006). It would "be inconsistent with the overall purposes of the Code, and chapter 13 in particular," to create disincentives for debtors to continue to try to obtain confirmation of the debtor's proposed plan unless and until it is determined that such efforts would be futile. See id.

feasible plan once her schedules are amended and the final amount of the Claim is fixed, particularly since future proposed plans may or may not include assumption of the Contract.

Dated: March 10, 2020

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE